2002 OK CIV APP 41

**Roy EASTERWOOD, Plaintiff/Appellant,**

v.

**CHOCTAW COUNTY DISTRICT ATTORNEY and Oklahoma Attorney General, Defendants/Appellees.**

**No. 95,589.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Jan. 11, 2002.

Certiorari Denied March 12, 2002.

Roy Easterwood, Stringtown, OK, pro se.

Tracy Folsom Milner, Assistant Attorney General, Oklahoma City, OK, for Appellees.

LARRY JOPLIN, Vice Chief Judge.

¶1 Plaintiff/Appellant Roy Easterwood (Plaintiff) seeks review of the trial court's order dismissing his petition for declaratory judgment, by which Plaintiff sought an adjudication of the ethical duties and obligations of Defendants/Appellees Choctaw County District Attorney and the Oklahoma Attorney General (DA and AG, or collectively, Defendants) to "notify [him] their expert witness they used against him to obtain a con-

viction was not credible, and the responsibility to rectify the error."

¶ 2 According to the pleadings, DA filed an information sometime in early 1979 charging Plaintiff with the crime of murder in the first degree, to which Plaintiff entered a plea of not guilty by reason of insanity. At trial, Plaintiff presented expert testimony that at the time of both the homicide and trial, Plaintiff could not distinguish between right and wrong, and could not appreciate the nature and consequences of his actions. In rebuttal, DA presented the testimony of Dr. R.D. Garcia, a psychiatrist at Eastern State Hospital, Vinita, Oklahoma, who, upon an examination of Plaintiff, found him competent at all times relevant.

¶ 3 The jury convicted Plaintiff of the charged crime, and Plaintiff received a sentence of life imprisonment. On direct appeal, and citing Dr. Garcia's testimony, the Oklahoma Court of Criminal Appeals affirmed. Plaintiff subsequently sought post-conviction relief in state court, and filed two petitions for writ of habeas corpus in the federal court, which the courts denied in all respects.

¶ 4 In April 1997, the Tenth Circuit Court of Appeals issued its opinion in *Williamson v. Ward*, 110 F.3d 1508 (10th Cir.(Okla.) 1997). In that case, the United States District Court for the Eastern District of Oklahoma granted the inmate/petitioner his requested writ of habeas corpus on a finding of ineffective assistance of counsel at trial. The Tenth Circuit affirmed, holding that the petitioner's appointed counsel "did not exercise reasonable professional judgment in deciding to limit his investigation of his client's mental condition … and to rely solely on Dr. Garcia's letter in deciding not to request a competency determination," and noted evidence in the record that:

> Had [counsel] investigated his client's history of mental problems and sought information about his mental state either from the mental health professionals who had treated him or from his family, [he] would have discovered significant evidence casting doubt upon the validity of Dr. Garcia's 1985 opinion that Mr. Williamson was competent. Most significantly, at the time

Dr. Garcia rendered that opinion, it appears that Dr. Garcia, who died in 1986, was himself suffering from severe untreated bipolar disorder. (Citation omitted.) The record contains affidavits to that effect from mental health professionals who worked with Dr. Garcia and from a state Inspector General for the Oklahoma Department of Mental Health who received complaints about Dr. Garcia's bizarre conduct. The record also contains an affidavit from Dr. Philip J. Murphy, a clinical psychologist, who reviewed Dr. Garcia's personal medical history and his history of patient evaluations at Eastern State Hospital after Dr. Garcia's death. Dr. Murphy stated that, in his expert opinion, Dr. Garcia's "illness, in its manic form, was severe enough to affect Dr. Garcia's treatment of his patients and to impair and distort his diagnostic judgment." (Citation omitted.) Dr. Murphy concluded:

> In summary, it is my opinion that because of the distorting influence of Dr. Garcia's mental illness on his perceptions and his judgments, neither Dr. Garcia's evaluations of Mr. Coleman's condition nor his opinion about Mr. Coleman's competency to stand trial should have formed the basis of a determination of Mr. Coleman's competency in 1979.

*Williamson*, 110 F.3d at 1519.

¶ 5 Plaintiff discovered the *Williamson* opinion in August 1998, and in October 1998, applied to the Tenth Circuit for permission to file a successive petition for writ of habeas corpus. See 28 U.S.C. §§ 2244, 2254. The Tenth Circuit granted the request, and in November 1998, Plaintiff filed his third petition for writ of habeas corpus in the United States District Court for the Eastern District of Oklahoma.

¶ 6 However, the federal district court dismissed Plaintiff's petition as untimely filed. On a certificate of appealability, the Tenth Circuit in June 2000 reversed and remanded for further proceedings, finding Plaintiff's successive petition for writ of habeas corpus timely. *Easterwood v. Champion*, 213 F.3d

1321 (10th Cir.(Okla.) 2000).[1]

¶ 7 In September 2000, Plaintiff commenced the instant declaratory judgment action, seeking an adjudication of Defendants' "ethical obligation" to "notify [him] their expert witness they used against him to obtain a conviction was not credible, and the responsibility to rectify the error." In his petition, Plaintiff asserted the Rules of Professional Conduct and Constitutional due process guarantees imposed on Defendants the duty and obligation to "notify and correct the incredible testimony and rectify the error," and that "declaratory judgment is proper to decide [his] rights."

¶ 8 AG filed a motion to dismiss, arguing that to the extent Plaintiff's petition sounded in tort, the Oklahoma Declaratory Judgment Act, 12 O.S. § 1651 et seq., did not permit litigation of the issues raised. AG also argued that to the extent Plaintiff's petition sought a vindication of civil rights under 42 U.S.C. § 1983, Plaintiff did not timely commence the action within two years of when Plaintiff knew or should have known of his challenge to Dr. Garcia's testimony.[2] *See, Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (state's personal injury statute dictates statute of limitations for § 1983 action); 12 O.S. 95 (3). AG lastly asserted no justiciable controversy, and immunity from liability under the Oklahoma Governmental Tort Claims Act, 51 O.S. 151, et seq., § 155(2), for the claimed loss arising from the exercise of "prosecutorial functions."

¶ 9 Plaintiff responded, objecting to the motion to dismiss. First, said Plaintiff, the law charged Defendants with an on-going obligation to reveal material evidence of which they knew or should have known affecting the validity of Dr. Garcia's opinions, and that Defendants never disclosed to him—at trial or since—the questionable nature of Dr. Garcia's opinions. *See, e.g., Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *United States v. Bag-*

*ley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985); *Kyles v. Whitley,* 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *East v. Johnson,* 123 F.3d 235, 239 (5th Cir.(Texas) 1997). Second, said Plaintiff, considering his "legal disability," i.e., his questionable competency, the statute of limitations posed no bar to his claims. Third, considering Defendants' failure to notify him concerning the weakness of Dr. Garcia's opinion in his case, now thoroughly impeached by reference to *Williamson,* his pleadings adequately set forth a claim for conspiracy to deny him his right to due process. So, said Plaintiff, there existed an actual case and controversy to be properly adjudicated in his action for a declaratory judgment.

¶ 10 On consideration of the parties' materials and briefs, the trial court granted the motion to dismiss:

... [T]he Petition should be denied for the reason that there is no actual controversy as required by Oklahoma's Declaratory Judgment Act at 12 O.S. § 1651. According to the Declaratory Judgment Act, district courts may enter declaratory judgments only in cases containing an actual controversy. 12 O.S.1991 § 1651. In the case at hand, no actual controversy exists. Plaintiff asks the Court to find that Defendants had an ethical obligation to Plaintiff to divulge information to him, either before trial or after conviction and direct appeal, concerning the competency or credibility of a state's expert witness. The ethical obligations of prosecutors are governed by the Rules of Professional Conduct and questions concerning a prosecutor's ethical obligations standing alone do not create or establish a case or actual controversy. Therefore, Plaintiff's petition must be dismissed.

Plaintiff appeals.

■■■ ¶ 11 "District courts may, in cases of actual controversy, determine rights, status, or other legal relations, including but not

---

1. The record before us reflects no resolution of this case.

2. Here, AG argued that the validity of Dr. Garcia's opinions had been questioned as early as

1990 and 1995, as well as in *Williamson* in 1997. *See, Coleman v. Saffle,* 912 F.2d 1217 (10th Cir.(Okla.) 1990); *Brewer v. Reynolds,* 51 F.3d 1519 (10th Cir.(Okla.) 1995).

limited to a determination of the construction or validity of ... any statute, ..., or other governmental regulation, whether or not other relief is or could be claimed, except that no such declaration shall be made concerning liability or nonliability for damages on account of alleged tortious injuries to persons or to property either before or after judgment...." 12 O.S. § 1651. By force of statute, there must therefore exist an "actual controversy":

> [T]o invoke the jurisdiction of the court under the declaratory judgments act there must be an *actual, existing justiciable controversy* between parties having opposing interests, which interests must be direct and substantial, and involve an actual, as distinguished from a possible, potential or contingent dispute.

*Gordon v. Followell*, 1964 OK 74, ¶ 0(1), 391 P.2d 242. (Emphasis added.) To be "justiciable," "the claim must be suitable for judicial inquiry[,] [which] requires determining whether the controversy (a) is definite and concrete, (b) concerns legal relations among parties with adverse interests and (c) is real and substantial so as to be capable of a decision granting or denying specific relief of a conclusive nature." *Dank v. Benson*, 2000 OK 40, ¶ 8, 5 P.3d 1088, 1091.[3] See also, 12 O.S. § 1651 ("a court may refuse to make such determination where the judgment, if rendered, would not terminate the controversy, or some part thereof, giving rise to the proceeding.")

¶ 12 Furthermore, the regulation of the legal profession and the adjudication of an attorney's ethical obligations ordinarily stands beyond the scope of a declaratory judgment action. *State Bar of Texas v. Gomez, et al.*, 891 S.W.2d 243 (Tx.1994). And, an action for a declaratory judgment will not lie "to launch an impermissible collateral attack upon the judgment and sentence in a criminal case." *Oklahoma State Senate ex*

*rel. Roberts v. Hetherington*, 1994 OK 16, ¶ 1, 868 P.2d 708, 709.

¶ 13 In the present case, we find no actual, justiciable controversy capable of determination. The Defendants' ethical obligations as members of the legal profession and prosecutors may not be determined by declaratory judgment. To the extent Plaintiff's claims sound in tort, § 1651 expressly proscribes a declaration of rights. To the extent Plaintiff claims some violation of his civil rights allegedly remediable under 42 U.S.C. § 1983, because Plaintiff knew or should have known of those claims upon publication of *Williamson* and receipt thereof in the prison library in July 1997,[4] but did not commence the instant action until September 2000, it would appear those claims stand barred by the two year statute of limitations.[5] *Wilson*, 471 U.S. at 280, 105 S.Ct. at 1949; 12 O.S. 95 (3). And, Plaintiff may not collaterally attack the judgment and sentence in his criminal case by an action for declaratory judgment. *Oklahoma State Senate ex rel. Roberts*, 1994 OK 16, ¶ 1, 868 P.2d at 709.

¶ 14 The order of the trial court is therefore AFFIRMED.

¶ 15 JONES, J., and BUETTNER, J., concur.

---

**3.** Decided on a petition to "assume original jurisdiction and declare the meaning of the 'read at length' provision of Okla. Const. art. 5, § 34," praying for the application of "any constitutional construction provided by the Court ... prospectively ... [by writ of mandamus] to the 'legislative process' used in the House of Representatives." 2000 OK 40, ¶ 0, 5 P.3d at 1088–89.

**4.** See, *Easterwood*, 213 F.3d at 1323.

**5.** pro se proceedings here, as well as in the Eastern District and 10th Circuit Courts, belie his claim to tolling of the statute of limitations on account of a mental disability.